## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SYNASIA SANDERS and JACQUELINE HINE, behalf of themselves and all others similarly situated, | ) ) ) ) | CASE NO. 1:21-CV-04778-SCJ |
| Plaintiffs, | ) ) ) | JURY TRIAL DEMANDED |
| v. | ) ) | |
| OS RESTAURANT SERVICES, LLC, OUTBACK STEAKHOUSE INTERNATIONAL, L.P., OUTBACK STEAKHOUSE OF FLORIDA, LLC, and BONEFISH GRILL, LLC | ) ) ) ) ) ) | |
| Defendants. | | |

## PLAINTIFFS' FIRST AMENDED COLLECTIVE ACTION COMPLAINT

1.     The case implicates Defendant OS Restaurant Services, LLC's, Defendant Outback Steakhouse International, L.P.'s, Defendant Outback Steakhouse of Florida, LLC's, and Defendant Bonefish Grill, LLC's ("Defendants" collectively) violations of the Fair Labor Standards Act's ("FLSA") tip credit and subsequent underpayment of their employees at the federally mandated minimum wage rate for Defendants' failure to pay Plaintiffs and all similarly situated workers their earned minimum

wages.  Plaintiffs bring this case as a collective action under the FLSA, 29 U.S.C. 216(b).[1]

## SUMMARY OF ACTION

2.      Defendants pays their tipped employees below the minimum wage rate by taking advantage of the tip-credit provisions of the FLSA. Under the tip-credit provision, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers.

3.      However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. 203(m).  An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id*. stating (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection.").  That is, the employer must inform the employee: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the

---

[1] This Amended Complaint is being filed pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).  On February 22, 2022, Defendants filed their Answer. (Dk. 21).  This Amended Complaint is being filed 21 days after Defendants served their Answer. *See* Fed. R. Civ. P. 15(a)(1)(B).

tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

4.     Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as management staff. *See Myers v. Copper Cellar Corp*., 192 F.3d 546, 551 (6th Cir. 1999) (for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."); *Portales v. MBA Inv. Co., LLC,* No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014)("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA." (citing 29 U.S.C. § 203)); *Bernal v. Vankar Enter., Inc*., 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

5.     Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA).  *See* 29 U.S.C. 203(m).

6.     Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation.  *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073,

1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at \*4 (N.D. Ohio July 7, 2017)(employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Roussell v. Brinker Intern., Inc.,* No. 05 Civ. 3733, 2008 WL 2714079, at \*12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his "tipped employee" capacity.") (quoting 29 C.F.R. 531.56(e)).

7.      Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Marsh v. J. Alexander's, LLC,* 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Fast v. Applebee's Intern., Inc.,* 638 F.3d 872, 881 (8th Cir. 2011) (granting the DOL's 20% standard deference); *Driver v. AppleIllinois,*

4

*LLC*, No. 06 Civ. 6149, 2012 WL 3716482, at \*2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (the court indirectly cast its imprimatur on the DOL's aforementioned dual-jobs regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20% standard in § 30d00(e)); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying Defendants' motion to dismiss explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at \*6 (N.D. Ga., 2015) (". . . a reasonable interpretation of § 531.56(e) is that [plaintiff] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties."); *Crate v. Q's Restaurant Group LLC*, 2014 WL 10556347, at \*4 (M.D. Fla., 2014) ("[T]he Court concludes that the 20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much time a tipped employee can engage in related, non-tip-producing activity before such time must be compensated directly by the employer at the full minimum wage rate.").

8.      Defendants violated the FLSA in the following respects:

a.  **Violation for failure to inform:**  Defendants failed to correctly inform Plaintiffs and the Class Members of the desire to rely on the tip credit to meet their minimum wage obligations.  In fact, Defendants failed to inform Plaintiffs of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

b.  **Violation for making illegal deductions that reduced the direct wage of Plaintiffs below the minimum required hourly wage for tipped employees:**  Plaintiffs and the Class Members were required to purchase certain clothing to work for Defendants, which reduced their wages below the minimum hourly wage required for tipped employees.

c.  **Violation for performing work unrelated to tipped occupation:**  Plaintiffs and the Class Members were required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to cleaning floors, cleaning pictures and light fixtures, polishing silverware and glasses, cleaning ledges, cleaning bathrooms, deep cleaning the restaurant, scraping gum from underneath tables, preparing the potato bar, making butter balls, making bread, cleaning the soda machine, applying murphy oil to the hardwood on seats and booths.

d.  **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week**: Plaintiffs and the Class Members were required to perform greater than 20% of their time in performing non-tip producing side work, including, but not limited to setting up tables, cleaning tables, bussing tables, wiping booths, refilling condiments, amongst other duties.

9.       As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiffs and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked.  In other words, Defendants must account for the difference between the wages paid to Plaintiffs and all similarly situated workers and the minimum wage rate.

## SUBJECT MATTER JURISDICTION AND VENUE

10.       This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et. seq.*

11.       Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged.

## PARTIES AND PERSONAL JURISDICTION

12.       Plaintiff Synasia Sanders is an individual who worked at Outback Steakhouse as a server.  Her written consent to this action was previously filed with the Court.

13.       Plaintiff Jacqueline Hine is an individual who worked for Outback Steakhouse as a server and bartender.  Plaintiff Hine also worked for Bonefish Grill

as a server and bartender.  Her written consent forms are attached hereto as Exhibits "A" and "B."

14.     The Outback Class Members are all current and former tipped employees who worked for the Outback Defendants[2] for at least one week during the three-year period prior to the filing of this action to the present.

15.     The Bonefish Class Members are all current and former tipped employees who worked for the Bonefish Defendants[3] for at least one week during the three-year period prior to the filing of this action to the present.

16.     The Outback Class Members and the Bonefish Class Members shall be collectively referred to as the "Class Members."

17.     Defendant OS Restaurant Services, LLC is a foreign limited liability company doing business in Georgia. Said Defendant has been served and has made an appearance in this case.

18.     Defendant Outback Steakhouse International, L.P. is a foreign limited liability partnership doing business in Georgia. Said Defendant has been served and has made an appearance in this case.

---

[2] The Outback Defendants include Defendants OS Restaurant Services, LLC, Outback Steakhouse International, L.P., and Outback Steakhouse of Florida, LLC.

[3] The Bonefish Defendants include Defendants OS Restaurant Services, LLC and Bonefish Grill, LLC.

19.     Defendant Outback Steakhouse of Florida, LLC is a foreign limited liability company doing business in Georgia. Said Defendant has been served and has made an appearance in this case.

20.     Defendant Bonefish Grill, LLC is a foreign limited liability company doing business in Georgia.  Said Defendant can be served with process by serving its registered agent Corporate Creations Network, Inc. at 2985 Gordy Parkway, 1st Floor, Marietta, GA 30066.

21.     Personal jurisdiction exists over Defendants because they have sufficient minimum contacts with the State of Georgia to confer personal jurisdiction. Defendants conduct business throughout Georgia. In particular, Defendants contracted with and employ Georgia residents, have Georgia customers, market to residents of Georgia, and own property in Georgia.

## COVERAGE

22.     At all material times, Defendants have been an employer within the meaning of the FLSA.  29 U.S.C. § 203(d).

23.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA.  29 U.S.C. § 203(s)(1).

24.     At all material times, Defendants have enjoyed yearly gross revenue in excess of $500,000.

25.     At all material times, Plaintiffs were employees engaged in the commerce or the production of goods for commerce.

26.     At all material times, Defendants OS Restaurant Services, LLC, Outback Steakhouse International, L.P., and Outback Steakhouse of Florida, LLC (collectively the "Outback Defendants") have operated as a "single enterprise" within the meaning of 29 U.S.C. § 203(r)(1).  That is the Outback Defendants perform related activities through unified operation and common control for a common business purpose.

27.     The Outback Defendants operate a nationwide chain of restaurants with the name "Outback Steakhouse" under the control of the same senior level management.   Indeed, the restaurants advertise themselves as a unified entity through the same website.

28.     The Outback Defendants represent themselves to the public as one restaurant operating at multiple locations.  They share employees, have a common management, pool their resources, operate from the same headquarters, have common ownership, and have the same operating name.

29.     The Outback Defendants operate under a unified business model and part of that unified business model is the wage violations alleged in this Complaint.

30.     Thus, the Outback Defendants formed a "single enterprise" and are liable for the violations of the other.

31.     Similarly, Defendants OS Restaurant Services, LLC and Bonefish Grill, LLC (collectively the "Bonefish Defendants") have operated as a "single enterprise" within the meaning of 29 U.S.C. § 203(r)(1).  That is the Bonefish Defendants perform related activities through unified operation and common control for a common business purpose.

32.     The Bonefish Defendants operate a nationwide chain of restaurants with the name "Bonefish Grill" under the control of the same senior level management. Indeed, the restaurants advertise themselves as a unified entity through the same website.

33.     The Bonefish Defendants represent themselves to the public as one restaurant operating at multiple locations.  They share employees, have a common management, pool their resources, operate from the same headquarters, have common ownership, and have the same operating name.

34.     The Bonefish Defendants operate under a unified business model and part of that unified business model is the wage violations alleged in this Complaint.

35.     Thus, the Bonefish Defendants formed a "single enterprise" and are liable for the violations of the other.

## FACTS

36.     The Outback Defendants operate a nationwide chain of restaurants under the trade name "Outback Steakhouse" throughout the U.S.  The Outback Defendants operate in Arizona, Alabama, Florida, Missouri, Georgia, New Mexico, Oklahoma, Ohio, Tennessee, Texas and other states.

37.     Similarly, the Bonefish Defendants operate a nationwide chain of restaurants under the trade name "Bonefish Grill" throughout the U.S.  The Bonefish Defendants operate in Alabama, Arkansas, Florida, Georgia, Missouri, Nebraska, New York, Oklahoma, Ohio, Tennessee, Texas and other states.

38.     The Outback Steakhouse restaurants are full-service restaurants that employ waiters and bartenders to provide services to customers.

39.     Likewise, the Bonefish Grill restaurants are full-service restaurants that employ waiters and bartenders to provide services to customers.

40.     A waiter gathers orders from customers and delivers food and drinks to the customers.  A waiter is paid an hourly wage by Defendants and receives tips from customers.  A bartender serves prepares and serves drinks to customers.  A bartender is paid an hourly wage by Defendants and receives tips from customers.

41.     However, both the Outback Defendants and the Bonefish Defendants paid their tipped workers less than the minimum wage by attempting to utilize the tip credit to meet their minimum wage obligation to their tipped workers, including Plaintiffs, the Outback Class Members, and the Bonefish Class Members. Unfortunately, both the Outback Defendants and the Bonefish Defendants failed to satisfy the requirements to claim the tip credit for the Plaintiffs and Class Members.

42.     Plaintiff Sanders worked for the Outback Defendants at the Outback Steakhouse in Atlanta, Georgia.  She worked as a waitress and was paid less than the federal minimum wage.  Plaintiff Sanders worked for the Outback Defendants from approximately July 2016 to February 2020.

43.     Plaintiff Hine also worked at Outback Steakhouse.  She worked as a waitress and bartender and was paid less than the federal minimum wage.  Plaintiff Hine worked for the Outback Defendants from approximately January 2018 to May 2019.

44.     Plaintiff Hine also worked for the Bonefish Defendants.  She worked at Bonefish Grill as a waitress and bartender and was paid less than the federal minimum wage.   Plaintiff Hine worked for the Bonefish Defendants from approximately July 2020 to May 2021.

45.      The tip credit has a harmful effect on workers that threatens the health of the economy.  Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter large corporations operating restaurants advising of the ills of using the tip credit. (*See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited November 5, 2021).  The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work**. As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.

(*Id.*) (emphasis in original)

46.      Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the trip credit to meet its minimum wage obligations.

47.      In this case, Defendants did not satisfy the strict requirements to use the tip credit. Defendants maintained a policy and practice whereby they failed to

provide the Plaintiffs and the Class Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

48.     Defendants also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiffs and the Class Members were engaged in dual occupations while being compensated at the tip credit rate.  While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

49.     For example, Plaintiffs Sanders and Hine regularly performed duties unrelated to their tipped occupation while working for Outback Steakhouse.  These duties included but were not limited to the following: cleaning floors, cleaning pictures and light fixtures, polishing silverware and glasses, cleaning ledges, cleaning bathrooms, deep cleaning the restaurant, scraping gum from underneath tables, preparing the potato bar, making butter balls, making bread, cleaning the soda

machine, applying murphy oil to the hardwood on seats and booths, amongst other activities that were not related to tipped duties.

50.      Similarly, Plaintiff Hine performed duties unrelated to her work as server and bartender while working for Bonefish Grill.  These duties included but were not limited to the following: doing dishes, cutting fruit and lemons, making martini mixes, setting up the bread station, cleaning floors, amongst other activities that were not related to tipped duties.

51.      Defendants also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent, performing non-tip producing side work related to the employees' tipped occupation.

52.      Specifically, the Outback Defendants maintained a policy and practice whereby tipped employees, were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to setting up tables, cleaning tables, bussing tables, wiping booths, and refilling condiments.

53.      Likewise, the Bonefish Defendants maintained a policy and practice whereby tipped employees, were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to rolling

silverware, brewing tea and coffee, filling condiments, cleaning tables, and cleaning chairs.

54.     Further, Defendants required Plaintiffs and the Class Members to perform non-tip producing work prior to the opening of the restaurant and after the restaurant closed.  Indeed, Defendants required the Plaintiffs and the Class Members to arrive prior to the restaurants opening for business when there were no customers and no opportunity to earn tips, to perform manual labor cleaning and setup duties. Likewise, Defendants required the Plaintiffs and the Class Members to remain at the restaurants after they had closed for business and when there was no opportunity to earn tips, to perform manual labor cleaning duties.  At times, they spent 31 minutes to two hours performing work before the restaurant was open and the same amount of time after the restaurant was closed performing non-tip producing work.

55.     However, Defendants did not pay their tipped employees the full minimum wage rate for this work. The duties that Defendants required Plaintiffs and the Class Members to perform were duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

56.     During the Plaintiffs' and the Class Members' employment, checklists were posted in Defendants' restaurants with numerous non-tipped duties that tipped employees were required to perform, in addition to serving customers.

57.     When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

58.     Indeed, the Outback Defendants and Bonefish Defendants did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

59.     The Outback Defendants and Bonefish Defendants did not track or record the amount of time the tipped employees spent performing non-tipped work, even though they were capable of doing so.  The Outback Defendants and Bonefish Defendants maintain company-wide timekeeping systems that are capable of tracking multiple job codes for different work assignments, but they failed to enact policies to track to the specific tasks performed by the Plaintiffs and the Class Members.

60.     Both the Outback Defendants and Bonefish Defendants use a point-of-sale system to record hours worked by their tipped employees.  Further, the Outback Defendants and Bonefish Defendants analyze the information collected by their point-of-sale system, including the labor costs at each of their restaurants. The

Outback Defendants' and the Bonefish Grill Defendants' timekeeping systems were capable of tracking multiple job codes for different work assignments, but Defendants failed to track to the specific tasks performed by the Plaintiffs and the Class Members.

61.     In these point-of-sale systems, Defendants can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

62.     However, Defendants did not allow their tipped employees to clock-in at the full minimum wage rate when performing the non-tipped work described in this Complaint.

63.     Defendants' managers were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which created an incentive to keep the amount paid to tipped employees low.

64.     Moreover, Defendants violated the FLSA by not even paying the minimum "tipped" hourly rate.  Defendants required their tipped employees to pay for items for their uniform, including pants and shoes.  These clothing items were required to perform work for Defendants and were primarily for the benefit and convenience of Defendants. The costs for these items were not reimbursed by Defendants.

65.     Because Defendants paid their tipped employees at the minimum of $2.13 per hour (or the state's respective tipped wage), any week in which a tipped employee was required to pay for work related expenses for Defendants' business, their compensation fell below the minimum wage rate, thereby negating Defendants' entitlement to claim the tip credit.

66.      In other words, by requiring Plaintiffs and the Class Members to pay for these work-related expenses, their hourly rates of pay were reduced by the amount of these uniform costs.  As a result, they were not even paid the minimum hourly rate necessary for Defendants to claim the tip credit.

67.     Because Defendants violated the requirements to claim the tip credit, Defendants lost the right to take a credit toward their minimum wage obligation to Plaintiffs and the Class Members.

68.     As such, Plaintiffs, the Outback Class Members, and the Bonefish Class Members were not compensated at the minimum wage.

69.     Defendants knew or should have known that their policies and practices violate the law, and Defendants have not made a good faith effort to comply with the FLSA. Rather, Defendants acted knowingly, willfully, and/or with reckless disregard of the law carried and continue to carry out the illegal pattern and practice regarding their tipped employees as described in this Complaint. Defendants' method of paying

Plaintiffs, the Outback Class Members, and the Bonefish Class Members was not based on a good faith and reasonable belief that their conduct complied with the law.

## REVISED FIELD OPERATIONS HANDBOOK AND NEW DUAL JOBS REGULATION

70.     On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27 which provided a standard for interpreting the dual jobs regulation that was different than the "80/20" rule that had existed at the time.  However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference.  *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019). *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019); *Flores v. HMS Host Corp.*, No. 8:18-cv-03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019).

71.     Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019. (*See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa*).

72.     After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021.

(https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa). After delaying the effective date of the Final Rule. (https://www.dol.gov/agencies/whd/flsa/tips), on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a tipped employee can perform when an employer                is           taking          a            tip         credit." (https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal).

73.      After soliciting more comments, the Department of Labor announced on October 28, 2021, the publication of a final rule (Tips Dual Jobs final rule). (https://www.dol.gov/agencies/whd/flsa/tips).

74.      Under the Final Rule, an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes. That is, when a tipped worker performs non-tipped work for a continuous period of time exceeding 30 minutes, the employer cannot claim the tip credit.

75.      Here, Defendants illegally required Plaintiffs, the Outback Class Members, and the Bonefish Class Members to perform non-tip producing work for an excessive period of time.  That is because Defendants required Plaintiffs, the Outback Class Members, and the Bonefish Class Members to perform non-tipped

work 31 minutes to two hours before the restaurants were open for business, throughout their shifts, or after they were closed, when the restaurants did not have customers and when there was no opportunity to earn tips.  During this time, Defendants paid below the minimum wage rate and forced the Plaintiffs, the Outback Class Members, and the Bonefish Class Members to perform non-tip producing duties, as noted above.

76.     Given that Defendants failed to comply with the requirements to take the tip credit, Defendants has lost the ability to claim the tip credit.

## COLLECTIVE ACTION ALLEGATIONS

77.     Plaintiffs bring this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b).  Plaintiffs have actual knowledge, through conversations with their co-workers that a collective of similarly situated workers exists who have been subjected to the same policies of Defendants with respect to the payment of the minimum wage.

78.     The Class Members are similarly situated to Plaintiffs in that they shared the same duties and were subject to the same violations of the FLSA.

79.     Like Plaintiffs, the Class Members were not given proper notice of the tip credit provisions, and performed substantial work that was unrelated to their tip producing duties for a significant period of time.

80.     Moreover, the Class Members were also subject to paying work-related expenses that dropped their compensation below the minimum wage.

81.     Plaintiffs and the Class Members all labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

82.     The names and address of the Class Members of the are available from Defendants' records.  To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

83.     Although the exact amount of damages may vary among the Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

84.     As such, the Outback Class is properly defined as follows:

**All current and former tipped employees who worked for the Outback Defendants for at least one week during the three-year period prior to the filing of this action to the present.**

85.     The Bonefish Class is properly defined as follows:

**All current and former tipped employees who worked for the Bonefish Defendants for at least one week during the three-year period prior to the filing of this action to the present.**

## CAUSE OF ACTION

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS

### FAILURE TO PAY THE MINIMUM WAGE

86.     Plaintiffs incorporate the preceding paragraphs by reference.

87.     This count arises from Defendants' violation of the FLSA in connection with their failure to pay the minimum wages. *See* 29 U.S.C. § 206.

88.     Plaintiffs and the Class Members were paid hourly rates less than the minimum wage while working for Defendants.

89.     Plaintiffs and the Class Members were not exempt from the minimum wage requirements of the FLSA.

90.     Defendants' failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiffs and the Class Members being paid less than the Federal minimum wage rate.

91.     Defendants' failure to pay the minimum wage to Plaintiffs and the Class Members, in violation of the FLSA was willful and not based on a good faith belief that their conduct did not violate the FLSA.  29 U.S.C. § 255(a).

## WAGE DAMAGES SOUGHT

92.     Plaintiffs and the Class Members are entitled to receive the difference between the minimum wage and the tip credit adjusted minimum wage for each hour they worked.

93.     Plaintiffs and the Class Members are entitled to liquidated damages.

94.     Plaintiffs and the Class Members are also entitled to reimbursement for all work-related expenses, and to recover their attorney's fees and costs, as required by the FLSA.

## JURY DEMAND

95.     Pursuant to their rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiffs hereby demand trial by jury.

## PRAYER FOR RELIEF

96.     For these reasons, Plaintiffs respectfully request that judgment be entered in their favor awarding them and the Class Members:

a.  Minimum wage compensation unadulterated by the tip credit;

b.  Liquidated damages;

c.  Reimbursement for all expenses and wages wrongfully withheld;

d.  An order conditionally certifying this matter as a collective action;

e.  An order requiring Defendants to correct their pay practices going forward;

f.  Reasonable attorney's fees, costs, and expenses of this action;

g.  Pre-judgment interest (to the extent liquated damages are not awarded) and

post judgment interest; and

h.  Such other and further relief to which Plaintiffs and the Class Members may

be entitled, both in law and in equity.

Respectfully submitted,

By:  */s/ A. Lee Parks*_____
A. Lee Parks
Georgia Bar No. 563750
lparks@pcwlawfirm.com
John L. Mays
Georgia Bar No. 986574
jmays@pcwlawfirm.com
Parks, Chesin & Walbert, P.C.
75 Fourteenth Street
26th Floor
Atlanta, GA 30309
Tel. (404) 873-8000
Fax. (404) 873-8050

And

By:*/s/ Don J. Foty*_____
Don J. Foty
(admitted pro hac vice)
Hodges & Foty, LLP
Texas Bar No. 24050022
4409 Montrose Blvd, Ste. 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
dfoty@hftrialfirm.com

And

Anthony J. Lazzaro
Ohio Bar No. 0077962
(admitted pro hac vice)
Alanna Klein Fischer
Ohio Bar No. 0090986
(admitted pro hac vice)
Lori M. Griffin
Ohio Bar No. 0085241
(admitted pro hac vice)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
alanna@lazzarolawfirm.com
lori@lazzarolawfirm.com

Attorneys for Plaintiff and Class Members

## **CERTIFICATE OF SERVICE**

I certify that on this March 15, 2022, a true and correct copy of the foregoing instrument was served to all counsel of record via the court's electronic case filing system.

*/s/ Don J. Foty*
Don J. Foty